UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN MICHAEL MCKEOWN,

    Plaintiff,

v.

KELLY D. AYOTTE, JOANN
ROTTENBUCHER, MICHAEL
ALEXANDER, PATRICIA L. CARUSO,
DANIEL HEYNS and BRIAN J. SCHAF,

    Defendants.
_____/

Case No. 13-11971

Hon. Denise Page Hood

**OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT
AND
ORDER SETTING DATES**

**I.   BACKGROUND/FACTS**

On May 3, 2013, Plaintiff Sean Michael McKeown filed the instant Complaint against Defendants Kelley D. Ayotte, JoAnn Rottenbucher, Michael Alexander, Patricia L. Caruso, Daniel Heyns and Brian J. Schaf alleging: Fourth, Fifth and Fourteenth Amendment Violations as to Defendants Ayotte, Rottenbucher, Alexander, Caruso and Heyns (Count I); Sixth Amendment Violation as to Defendant Schaf

(Count II) and Negligence as to Defendants Ayotte, Rottenbucher, Alexander, Caruso and Heyns (Count III).

McKeown entered a plea of guilty to one count of home invasion, first degree, in violation of M.C.L. § 750.110(A)(2) on December 9, 2002. (Resp., App. B, Macomb County, Case No. 02-3716-FH)  Judge Diane Druzinski of the Macomb County Circuit Court sentenced McKeown to three years reporting probation, with the first six months on an electronic tether on March 11, 2003.  (Resp., App. B)

McKeown violated the term of his probation in Case No. 02-3716 by receiving two subsequent convictions.  McKeown entered a plea of guilty in Case No. 04-0520-FH to one count of attempt home invasion, first degree, in violation of M.C.L. § 750.110(A)(2) and in Case No. 04-2639-FH to one count of attempted criminal sexual conduct in the third degree, in violation of M.C.L. § 750.520(D)(1)(A). On November 12, 2004, McKeown was sentenced on all three cases.  McKeown received 343 days in the Macomb County Jail in both Case Nos. 04-0520 and 04-2639, to be served concurrently, but consecutively to the probation violation sentence of 343 days, with 343 days credit.  (Resp., App. B) The probation violation in Case No. 02-3716 was extended to March 11, 2006.  (Resp., App. B)

After McKeown served his jail time, he first reported to Probation Officer Ayotte on September 12, 2005, at which time she informed him that he would never

"make it" and would be in prison within 3 weeks. (Resp. App. C, S. McKeown Aff.) McKeown satisfied his financial obligation in Case No. 02-3716 prior to his anticipated probation end period of March 11, 2006. (Resp., App. C)

Without notice to McKeown, PO Ayotte submitted an *ex parte* petition to the court seeking to extend McKeown's probationary term until November 2007. The petition was granted and a docket entry appears on February 23, 2006 titled "Petition and Order Amending Probation", but no details are entered on the docket as to the length of the amended probation term. (Resp., App. B and D) PO Ayotte never informed McKeown that she was going to seek an extension of the probation term, nor did she serve McKeown with a copy of the order extending the probation term. (Resp., App. C)

On March 22, 2006, McKeown appeared in court for arraignment of probation violations in Case Nos. 04-0520 and 04-2639 for cutting off his tether transmitter on March 11, 2006. (Resp., App. F, 3/22/06 Tr.) On April 4, 2006, McKeown pled guilty to the probation violations in both Case Nos. 04-0520 and 04-2639. (Resp. App. F, 4/4/06 Tr.) The circuit court continued probation with the original probation term of three years through November 12, 2007 in both Case Nos. 04-0520 and 04-2639. (Resp. App. F, 4/11/06 Tr.)

On November 30, 2006, McKeown was in court for a probation violation

hearing in Case Nos. 02-3716, 04-2639, and 04-0520. McKeown informed the circuit court that he believed his probation in Case No. 02-3716 ended in March 2006. McKeown claims it was at this hearing that he was first informed by the circuit court that the probation term in Case No. 02-3716 was extended until November 12, 2007. (Resp. App. G, 11/30/06 Tr.)

On January 4, 2007, after entering pleas of guilty to the probation violation charges, the circuit court terminated without improvement the probation terms for Case Nos. 02-3716, 04-2639 and 04-0520. McKeown was then sentenced in Case Nos. 02-3716, 04-2639, 04-0520 and 06-5180, to concurrent terms of imprisonment of 28 months to 20 years with the Michigan Department of Corrections. (Resp., App. B) After filing a Motion from Relief of Judgment pursuant to MCR 6.500 in Case No. 02-3716, claiming that the sentence he received in that case was unconstitutional for lack of notice of the extension of the probationary period, the circuit court entered an order on May 6, 2011 granting the motion. (Resp., App. A) The instant suit followed on May 3, 2013.

This matter is before the Court on a Motion for Summary Judgment filed by the State of Michigan individual Defendants Ayotte, Rottenbucher, Alexander, Caruso, and Heyns. (Doc. No. 22) McKeown filed a response to the motion. (Doc. No. 25) No dispositive motion was filed on behalf of Defendant Schaf.

## II. ANALYSIS

### A. Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. Law on Qualified Immunity

The Eleventh Amendment precludes suits in federal court for monetary damages against state entities. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44 (1996). The Eleventh Amendment does not bar § 1983 actions brought against state officials in their official capacities seeking prospective injunctive relief. *Williams v. Commonwealth of Ky.*, 24 F.3d 1526, 1544 (6th Cir. 1994). Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

The Supreme Court in *Saucier* instituted a two-step sequential inquiry to determine qualified immunity. In *Pearson v. Callahan,* 555 U.S. 223 (2009), the Supreme Court abandoned the requirement that the inquiry must be performed sequentially. Although courts are free to consider the questions in whatever order is appropriate, the Supreme Court ruled that the two questions announced in *Saucier* remain good law and that it is often beneficial to engage in the two-step inquiry. *Pearson,* 555 U.S. at 236.

The first step of a three-step inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, whether the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201.

If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. "Qualified immunity 'gives ample

room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009) (citations omitted). The "clearly established" rights allegedly violated by the official cannot be considered at an abstract level, but must be approached at a level of specificity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The third step is to determine whether the facts alleged indicate that what the official did was objectively unreasonable in light of clearly established constitutional rights. *Gaspers v. Ohio Dep't of Youth Serv.*, 648 F.3d 400, 412 (6th Cir. 2011). "Reasonableness" is a question of law to be decided by the trial court. *Jeffers v. Heavrin*, 10 F.3d 380 (6th Cir. 1993). Once the defense of qualified immunity is raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Roth v. Guzman*, 650 F.3d 603, 609 (6th Cir. 2011).

### C. Constitutional Violation/Procedural Due Process/Notice (Count I)

The Michigan Defendants argue there is no Procedural Due Process claim for lack of notice in extending the probation term since Michigan law provides that a judge may enter an order extending a probation term *ex parte*. The Michigan Defendants assert that it was McKeown's act of pleading guilty to a probation

violation, knowing he did not receive a copy of the order, which caused him harm, not any actions by the Michigan Defendants.

McKeown responds that it was the lack of notice that the probation term was extended in Case No. 02-3716 which is alleged in this case. McKeown agrees that Michigan law allows a court to extend the terms of probation in M.C.L. § 771.2 and that the extension may be done *ex parte*, with no advance notice to the probationer. However, the probationer must be immediately notified of any amendment to the probationary term and be able to contest the changes under the United States Constitution and Michigan case law.

In Michigan, an order of probation may be amended *ex parte*, and there is no requirement that the defendant be given notice or an opportunity to be heard before the amendment. *People v. Britt*, 202 Mich. App. 714, 716 (1993); M.C.L. § 771.2(2). To state a due process claim, a plaintiff must first establish a liberty interest that is entitled to protection by the due process clause. After a prisoner has been released on probation, he has a constitutionally protected interest in remaining on probation. *Fields v. Quigley,* 2008 WL 4562211 at *5 (W.D. Mich. Oct. 8, 2008). If the probation is to be revoked, due process mandates procedural guarantees including written notice of the claimed violation and a hearing on the matter. *Black v. Romano*, 471 U.S. 606, 612 (1985); *Morrissey v. Brewer*, 408 U.S. 477 (1972). However, an

*ex parte* extension of a probation term does not violate a probationer's due process rights and no prior notice or hearing is required. *Forgues v. United States,* 636 F.2d 1126, 1127 (6th Cir. 1980). Probation is a non-custodial supervisory period far less onerous to the probationer than the incarceration which results from the revocation of probation. *Id.* A non-custodial period of supervision within the statutory limits does not implicate a liberty interest sufficient to require a preextension hearing as a constitutionally mandated right. *Id.* An extension of probation is not as "grievous" a "loss" as revocation. *Weaver v. Warden, London Correctional Institution*, 2007 WL 2407058 at *4 (S.D. Ohio 2007) (citing *Skipworth v. U.S.*, 508 F.2d 598, 601-602 (3rd Cir. 1975). The primary "loss" suffered by an individual whose probation has been extended lies not in the continuing restrictions themselves, but in the possibility of future revocation. *Id.* While such a loss is indeed serious, it is merely potential at the time of extension, and the due process clause clearly provides the protection of a hearing in the event that revocation proceedings should subsequently occur. *Id.*

McKeown has failed to show that a constitutional violation occurred since he has no Due Process right to notice prior to a court issuing an order extending a probation term. As to whether a probationer is entitled to "immediate" notice of an order extending a probation term, no case law has held that due process requires "immediate" notice of an order extending a term of probation. Due Process only

requires notice and opportunity to be heard prior to revocation of a criminal defendant's probation or parole. *See, Gagnon v. Scarpelli*, 411 U.S. 778 782 (1973). The Michigan cases cited by McKeown, each addressed below, do not hold that a probationer is required to have notice after an order extending a probation term has been entered and do not address the specific issue of whether a probationer is required notice after an *ex parte* order to extend probation is entered.

In *People v. Marks*, 340 Mich. 495 (1954), the Michigan Supreme Court stated that while probation is a matter of grace, the probationer is entitled to fair treatment and that a defendant's rights are not impinged by the alteration of a probation order made within the statutory period. *Id.* at 501. The Michigan Appeals Court held in *People v. Britt*, 202 Mich. App. 714 (1993) that an order of probation may be amended *ex parte* without notice to a defendant prior to the amendment and that the *ex parte* order placing the defendant on the tether program was not an order of confinement. There was no allegation in *Britt* that the defendant did not receive notice of the *ex parte* order. In *People v. Kendall*, 142 Mich. App. 576 (1985), the issue was whether the court had the authority to extend probation even if there was no violation of the terms of probation. The Michigan Court of Appeals held that the court had such authority as long as the additional term was within the statutory maximum, which in this case was within the maximum five years. *Id.* at 579-80. The defendant received

notice of the extension after the order was entered, therefore, the issue before the appellate court did not involve lack of notice after the order was entered. The Michigan Court of Appeals in *People v. Graber*, 128 Mich. App. 185 (1983), held that a court is authorized to impose additional conditions of probation at any time and *ex parte*. No prior notice and an opportunity to be heard was required. *Id.* at 190. The defendant in *Graber* was immediately notified of the additional conditions of probation, therefore, the issue of whether notice was required after the amended probation order was entered was not addressed by the appellate court.

Although a potential violation of probation may be a serious loss, at the time of the *ex parte* extension of the probation, such a loss was speculative. In this case, McKeown had notice of the extension of the probation before the judge terminated his probation in Case No. 02-3716 (and the other two cases) and before he was sentenced to a term of imprisonment (concurrent with his other probation violations in other case numbers and a new case, which he does not contest in this case). The record submitted by McKeown shows that he pled guilty to the probation violations even though he asserted before the circuit court that he had no notice of the extension of the probation in Case No. 02-3716. (Resp. App. H, 1/4/2007 Tr.) Because McKeown failed to allege a Due Process violation against the individual Michigan Defendants, they are entitled to qualified immunity. McKeown has not stated a Due Process right

12

that is recognized, nor well-established. No well-established due process right requires that a probationer must receive notice immediately after an ex parte order extending a probation term is entered. Due Process only attaches where such a probation is revoked. Count I of the Complaint alleging a violation of Due Process must be dismissed.

### D. Statute of Limitations

The parties agree that the three-year statute of limitations applicable to personal injury actions in Michigan, M.C.L. § 600.5805(8), applies to § 1983 actions. *See Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986). The Michigan Defendants argue that McKeown's § 1983 action must be dismissed since McKeown discovered the existence of the ex parte order on November 30, 2006 and he did not file the instant suit until May 3, 2013, beyond the three-year limitations period. McKeown responds that it was not until May 6, 2011 that his claim began, which was the date the circuit judge granted his Motion for Relief from Judgment. McKeown asserts that filing the May 3, 2013 lawsuit was within the three-year limitations period.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a § 1983 cause of action attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated. *Id.* at 489-90. Based on the principles in *Heck*, McKeown's claim as to lack of notice of the *ex parte* order

did not begin to accrue until the order relating to his resentencing to a term of imprisonment related to the probation violation conviction was set aside on May 6, 2011. If McKeown had filed the lawsuit prior to that date, the suit may have been dismissed under *Heck* since it would have been a collateral attack of the probation violation conviction. McKeown's lawsuit was filed within the three-year statute of limitations from May 6, 2011 and will not be dismissed based on the statute of limitations defense. However, for the reasons set forth above addressing the merits, the McKeown's Due Process claim in Count I is dismissed.

### E. Quasi-Judicial Immunity

Because judicial immunity applies to a § 1983 action, based on the analysis above, this issue is moot.

The Michigan Defendants argue that PO Ayotte is entitled to quasi-judicial immunity because she was acting in a quasi-judicial capacity as a probation officer regarding the notice allegation of the *ex parte* order. McKeown responds that PO Ayotte is not entitled to judicial immunity since she was the individual who was tasked with sending notice to McKeown after the order was entered. McKeown is not challenging her authority to advise the court prior to a change in a term of probation, but that Ayotte failed to notify McKeown of the entry of the order.

Whether a defendant is entitled to immunity from a § 1983 action is a question

of federal law. *See, Martinez v. California*, 444 U.S. 277, 284 n. 8 (1980). Judges are immune from liability for damages for acts committed within their judicial jurisdiction. *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). The absolute immunity that protects judicial officers engaged in judicial functions also protects state officials engaged in adjudicative functions. *Dean v. Byerley,* 354 F.3d 540, 555 (6th Cir. 2004). Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). Quasi-judicial immunity does not apply to functions performed by state officers that are not judicial in nature. *Balas v. Leishman-Donaldson*, 1992 WL 217735, at *4 (6th Cir. 1992). "Whether an action is judicial depends on the nature and function of the act, not the act itself." *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999). The Sixth Circuit has noted that a "general, routine, investigative act is neither an adjudicative task nor a task so integral or intertwined with the judicial process such that quasi-judicial immunity applies." *Draine v. Leavy*, 504 Fed. App'x 494, 495 (6th Cir. 1992). The function of a probation officer in submitting a parole violation report is neither adjudicatory nor prosecutorial in nature. *Id.* at 496 *(citing Ray v. Pickett,* 734 F.2d 370, 374 (8th Cir. 1984)). Judicial immunity does not apply; only qualified immunity. *Id.*

In this case, the issue is whether PO Ayotte's failure to give notice is a judicial function. Based on the above-cited cases, it is not. PO Ayotte is not entitled to quasi-judicial immunity, but is entitled to qualified immunity. However, the Due Process in Count I is dismissed as to Ayotte for the reasons set forth above.

### F. Remaining Counts

At the hearing the parties confirmed that Count II, the Sixth Amendment Violation claims as to Defendant Schaf only, remains. Although Defendants argued after inquiry from the Court that the state law negligence claim in Count III must also be dismissed based on immunity grounds, Defendants did not raise this argument in their written briefs. Defendants raised the qualified immunity argument which only applies to individual government officials from liability on federal law constitutional actions brought under 42 U.S.C. § 1983. *Sheffey v. City of Covington*, 564 Fed. Appx. 783, 788-89 (6th Cir. Apr. 28, 2014). Defendants are also not entitled to quasi-judicial immunity protections as noted above.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Motion for Summary Judgment **(Doc. No. 22)** is GRANTED filed by Defendants Kelley D. Ayotte, JoAnn Rottenbucher, Michael Alexander, Patricia L. Caruso and Daniel Heyns. The federal Due Process Claim

(Count I) only is DISMISSED. The remaining claims are Count II (Sixth Amendment claim as to Defendant Brian J. Schaf) and Count III (Negligence claims as to Defendants Kelley D. Ayotte, JoAnn Rottenbucher, Michael Alexander, Patricia L. Caruso and Daniel Heyns).

IT IS FURTHER ORDERED that the following dates govern this matter:

Proposed *Joint* Final Pretrial Order
(See LR 16.2) must be submitted by: **April 6, 2015**

Motions in Limine must be filed by: **April 6, 2015**

Final Pretrial Conference: **April 13, 2015, 2:00 p.m.**
All parties with authority to settle must appear at the conference.

Jury Trial: **May 19, 2015, 9:00 a.m.**


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: February 12, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 12, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager