**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SEAN MICHAEL McKEOWN,

Plaintiff,

v.

Civil Action No. 13-11971

HONORABLE DENISE PAGE HOOD

KELLEY D. AYOTTE, JOANN ROTTENBUCHER, MICHAEL ALEXANDER, PATRICIA L. CARUSO, HEYNS DANIEL and BRIAN J. SCHAF,

Defendants.
_______________________________________/

**OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING ACTION**

## I. BACKGROUND/FACTS

On May 3, 2013, Plaintiff Sean Michael McKeown filed the instant Complaint against Defendants Kelley D. Ayotte, JoAnn Rottenbucher, Michael Alexander, Patricia L. Caruso, Daniel Heyns and Brian J. Schaf alleging: Fourth, Fifth and Fourteenth Amendment Violations as to Defendants Ayotte, Rottenbucher, Alexander, Caruso and Heyns (Count I); Sixth Amendment Violation as to Defendant Schaf (Count II); and, Negligence as to Defendants Ayotte, Rottenbucher, Alexander, Caruso and Heyns (Count III).

McKeown entered a plea of guilty to one count of home invasion, first degree,

in violation of M.C.L. § 750.110(A)(2) on December 9, 2002. (Macomb County, Case No. 02-3716-FH) Judge Diane Druzinski of the Macomb County Circuit Court sentenced McKeown on March 11, 2003 to three years reporting probation, with the first six months on an electronic tether.

McKeown violated the term of his probation in Case No. 02-3716 by receiving two subsequent convictions. McKeown entered a plea of guilty in Case No. 04-0520-FH to one count of attempt home invasion, first degree, in violation of M.C.L. § 750.110(A)(2) and in Case No. 04-2639-FH to one count of attempted criminal sexual conduct in the third degree, in violation of M.C.L. § 750.520(D)(1)(A). On November 12, 2004, McKeown was sentenced on all three cases. McKeown received 343 days in the Macomb County Jail in both Case Nos. 04-0520 and 04-2639, to be served concurrently, but consecutively to the probation violation sentence of 343 days, with 343 days credit. The probation in Case No. 02-3716 was extended to March 11, 2006.

After McKeown served his jail time, he claims that without notice to McKeown, PO Ayotte submitted an *ex parte* petition to the court seeking to extend McKeown's probationary term until November 2007. The petition was granted and a docket entry appears on February 23, 2006 titled "Petition and Order Amending Probation", but no details are entered on the docket as to the length of the amended probation term. PO Ayotte never informed McKeown that she was going to seek an

extension of the probation term, nor did she serve McKeown with a copy of the order extending the probation term.

On March 22, 2006, McKeown appeared in court for arraignment on probation violations in Case Nos. 04-0520 and 04-2639 for cutting off his tether transmitter on March 11, 2006. On April 4, 2006, McKeown pled guilty to the probation violations in both Case Nos. 04-0520 and 04-2639. The circuit court continued probation with the original probation term of three years through November 12, 2007 in both Case Nos. 04-0520 and 04-2639.

On November 30, 2006, McKeown was in court for a probation violation hearing in Case Nos. 02-3716, 04-2639, and 04-0520. McKeown informed the circuit court that he believed his probation in Case No. 02-3716 ended in March 2006. McKeown claims it was at this hearing that he was first informed by the circuit court that the probation term in Case No. 02-3716 was extended until November 12, 2007.

On January 4, 2007, after entering pleas of guilty to the probation violation charges, the circuit court terminated without improvement the probation terms for Case Nos. 02-3716, 04-2639 and 04-0520. McKeown was then sentenced in Case Nos. 02-3716, 04-2639, 04-0520 and 06-5180, to concurrent terms of imprisonment of 28 months to 20 years with the Michigan Department of Corrections. After filing a Motion from Relief of Judgment pursuant to MCR 6.500 in Case No. 02-3716,

claiming that the sentence he received in that case was unconstitutional for lack of notice of the extension of the probationary period, the circuit court entered an order on May 6, 2011 granting the motion. The instant suit followed on May 3, 2013.

The State of Michigan individual Defendants Ayotte, Rottenbucher, Alexander, Caruso, and Heyns filed a Motion for Summary Judgment which was granted by the Court on qualified immunity grounds as to the 42 U.S.C. § 1983 claims. (Doc. No. 26) The Court noted that the Michigan Defendants did not argue dismissal as to the state law negligence claim in Count III. The Court thereafter allowed the Michigan Defendants to file a second Motion for Summary Judgment to address the state law negligence claim alleged in Count III. McKeown filed a response to the motion and the Michigan Defendants a reply.

As to Defendant Schaf, he has now filed a Motion for Summary Judgment. McKeown filed a response to Schaf's motion and Schaf filed a reply to the response.

## II. ANALYSIS

### A. Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary

judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

**B. Michigan Defendants' Motion for Summary Judgment**

**1. Caruso and Heyns**

Caruso and Heyns, the ex-director and current director of the Michigan

Department of Corrections, argue that they are entitled to absolute immunity under state law because they are the highest-appointive executive officials. McKeown responds that they are not so entitled based on case law because the immunity is dependent upon whether the act complained of falls within the individual's discretionary or ministerial powers, citing *Cook v. Bennett*, 94 Mich. App. 93, 100 (1979). McKeown argues that the proper administration of the MDOC policies and procedures are ministerial, not discretionary. Caruso and Heyns reply that the case cited by McKeown is no longer valid based on more recent case law by the Michigan Supreme Court.

M.C.L. § 691.1407(5) provides:

> (5) A judge, a legislator, and the elective or highest appointive executive official or all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

*Ross v. Consumers Power Co.,* 363 N.W.2d 641, 647 (1985) held that the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their legislative or executive authority. In *Odom v. Wayne County*, 760 N.W.2d 217, 223 (2008), the Michigan Supreme Court held that M.C.L. § 691.1407(5) codified the holding in *Ross.* The Court held that courts need to determine whether the individual is the highest-ranking appointed

executive official at any level of government and if so then the individual is entitled to absolute immunity under M.C.L. § 691.1407(5). The statute and case law are clear that the highest ranking official is absolutely immune from suit under § 691.1407(5). Being such officials, Defendants Caruso and Heyns are dismissed as to the remaining negligence claim in Count III.

**2. Proximate Cause**

The Michigan Defendants argue that Ayotte, Rottenbucher, Alexander, Caruso and Heyns are entitled to immunity from the state-law negligence claim since their conduct did not amount to gross negligence and their action was not "the" proximate cause of McKeown's injury. They argue that at the time McKeown entered his plea of guilty to violating his probation, he already had knowledge that he did not receive notice his probation had been extended. Any injury suffered by McKeown was not because of the Michigan Defendants' action but his plea of guilty.

McKeown responds that PO Ayotte failed to follow the directives of the MDOC's Employee Policies and Field Operations Work Standards because she did not notify McKeown of her ex parte request to extend the probation, nor did McKeown receive notice that the probation was extended. McKeown argues that the proximate cause of his damages was the gross negligence of Defendants, especially Ayotte and Rottenbucher.

M.C.L. § 691.1407(2) provides that an employee of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee or member while in the course of employment if the employee is acting within the scope of his or her authority, that the agency is engaged in a governmental function, and the employee's conduct does not amount to gross negligence that is the proximate cause of the injury or damages. In *Robinson v. Detroit*, 462 Mich. 439, 462 (2000), the Michigan Supreme Court held that governmental employees are entitled to immunity because their conduct was not "the one most immediate, efficient, and direct cause of the injury or damage." "Gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. M.C.L. § 691.1407(8)(a).

McKeown responds that it was the lack of notice that the probation term was extended in Case No. 02-3716 which is alleged in this case. As this Court noted in its prior order, McKeown agrees that Michigan law allows a court to extend the terms of probation in M.C.L. § 771.2 and that the extension may be done *ex parte*, with no advance notice to the probationer. In Michigan, an order of probation may be amended *ex parte*, and there is no requirement that the defendant be given notice or an opportunity to be heard before the amendment. *People v. Britt*, 202 Mich. App. 714, 716 (1993); M.C.L. § 771.2(2). If the probation is to be *revoked*, due process

mandates procedural guarantees including written notice of the claimed violation and a hearing on the matter. *Black v. Romano*, 471 U.S. 606, 612 (1985); *Morrissey v. Brewer*, 408 U.S. 477 (1972). An extension of probation is not as "grievous" a "loss" as revocation. *Weaver v. Warden, London Correctional Institution*, 2007 WL 2407058 at *4 (S.D. Ohio 2007) (citing *Skipworth v. U.S.*, 508 F.2d 598, 601-602 (3rd Cir. 1975). The primary "loss" suffered by an individual whose probation has been extended lies not in the continuing restrictions themselves, but in the possibility of future revocation. *Id.* While such a loss is indeed serious, it is merely potential at the time of extension, and the due process clause clearly provides the protection of a hearing in the event that revocation proceedings should subsequently occur. *Id.*

In this case, PO Ayotte's action to seek an *ex parte* extension of McKeown's probation is allowed. This action cannot amount to "gross negligence" because it is allowed under the law. In this case, there was no "revocation" of the probation. As to the issue of lack of notice immediately after issuance of the order, McKeown submits no case law that supports his claim that the lack of "immediate" notice of an order extending a term of probation is an act of gross negligence. Due Process only requires notice and opportunity to be heard prior to revocation of a criminal defendant's probation or parole. *See, Gagnon v. Scarpelli*, 411 U.S. 778 782 (1973). In *People v. Marks*, 340 Mich. 495 (1954), the Michigan Supreme Court stated that

while probation is a matter of grace, the probationer is entitled to fair treatment and that a defendant's rights are not impinged by the alteration of a probation order made within the statutory period. *Id.* at 501. The Michigan Appeals Court held in *People v. Britt*, 202 Mich. App. 714 (1993) that an order of probation may be amended *ex parte* without notice to a defendant prior to the amendment and that the *ex parte* order placing the defendant on the tether program was not an order of confinement. There was no allegation in *Britt* that the defendant did not receive notice of the *ex parte* order. In *People v. Kendall*, 142 Mich. App. 576 (1985), the issue was whether the court had the authority to extend probation even if there was no violation of the terms of probation. The Michigan Court of Appeals held that the court had such authority as long as the additional term was within the statutory maximum, which in this case was within the maximum five years. *Id.* at 579-80. The defendant received notice of the extension after the order was entered, therefore, the issue before the appellate court did not involve lack of notice after the order was entered. The Michigan Court of Appeals in *People v. Graber*, 128 Mich. App. 185 (1983), held that a court is authorized to impose additional conditions of probation at any time and *ex parte*. No prior notice and an opportunity to be heard was required. *Id.* at 190. The defendant in *Graber* was immediately notified of the additional conditions of probation, therefore, the issue of whether notice was required after the amended probation order

was entered was not addressed by the appellate court.

Although a potential violation of probation may be a serious loss, at the time of the *ex parte* extension of the probation, such a loss was speculative. In this case, McKeown had notice of the extension of the probation before the judge terminated his probation in Case No. 02-3716 (and the other two cases) and before he was sentenced to a term of imprisonment (concurrent with his other probation violations in other case numbers and a new case, which he does not contest in this case). The record submitted by McKeown shows that he pled guilty to the probation violations even though he asserted before the circuit court that he had no notice of the extension of the probation in Case No. 02-3716. (Resp. App. H, 1/4/2007 Tr.) McKeown cannot show that Defendants' action of failing to provide him immediate notice of the order extending his probation was gross negligence or that such was the proximate cause of his injuries. The individual Michigan Defendants are entitled to governmental immunity on McKeown's negligence claim in Count III and must be dismissed.

**C. Defendant Schaf's Motion for Summary Judgment/State Actor**

Defendant Schaf argues he is not a state actor and the action against him must be dismissed. McKeown responds that his motion is untimely and he did not assert any defenses in his Answer and therefore waived any such argument.

Section 1983 permits individual recovery for certain violations of federal law,

requiring a plaintiff to allege 1) state action that 2) deprived an individual of federal statutory or constitutional rights. *Flint v. Ky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2011). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir.2009); *Street,* 102 F.3d at 814. In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 102 (6th Cir.1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)).

Here, Schaf was McKeown's counsel in the criminal proceedings. Schaf is not an employee of any defender office. Although this motion is untimely, the law requires that a plaintiff must prove his § 1983 claim and one of the elements is that the defendant must be a state actor. A private lawyer who is representing a client is not a state actor under color of state law within the meaning of § 1983. *See Polk County*

*v. Dodson*, 454 U.S. 312, 318 (1981). McKeown's claim against Schaf sounds like a tort claim for legal malpractice which is not cognizable under § 1983. *Pilgrim v. Littlefield*, 92 F.3d 413, 417 (6th Cir. 1996). Schaf must be dismissed from this action.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the State of Michigan Defendants' Second Motion for Summary Judgment **(No. 30)** is GRANTED.

IT IS FURTHER ORDERED that Defendant Schaff's Motion for Summary Judgment **(No. 29)** is GRANTED.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice and designated CLOSED on the Court's docket.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: March 30, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager